UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

ONONDAGA COUNTY LABORERS' HEALTH AND
WELFARE, PENSION, ANNUITY and TRAINING
FUNDS, by Janet M. Moro, as Fund Administrator,

                  **Plaintiffs,**

v.                                              01-CV-1330
                                                  (NAM/GJD)

GEDDES GLASS & METAL, INC.,
JOHN FINN, Individually, and
JOSEPH PUCELLO, Individually,

                  **Defendants.**
───────────────────────────────────────────

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Blitman & King LLP<br>Franklin Center<br>443 North Franklin Street<br>Suite 300<br>Syracuse, NY 13204-1415<br>*For Plaintiffs* | Jennifer A. Clark, Esq. |
| Byrne, Costello & Pickard, P.C.<br>MONY Tower I<br>100 Madison Street<br>Suite 800<br>Syracuse, NY 13202<br>*For Defendants* | Terry R. Pickard, Esq. |

Hon. Norman A. Mordue, D.J.:

## MEMORANDUM-DECISION AND ORDER

**I.**    **INTRODUCTION**

      Plaintiffs Onondaga County Laborers' Health and Welfare, Pension, Annuity and

Training Funds, by Janet M. Moro, as Fund Administrator, bring this action pursuant to section 502(g)(2) of the Employee Retirement and Security Income Act of 1974, ("ERISA"), 29 U.S.C. § 1132(g)(2), alleging that defendants Geddes Glass & Metal, Inc., John Finn, and Joseph Pucello violated the terms of the Collective Bargaining Agreement ("Agreement") Geddes Glass entered with Laborers International Union of North America, Local No. 433 ("union") by failing to remit contributions on behalf of those of its employees who were covered by the Agreement.  As a result, plaintiffs filed this action seeking the allegedly delinquent contributions, as well as interest, the greater of interest or liquidated damages, costs and fees of collection, audit fees, and attorneys' fees pursuant to the Agreement, the Restated Agreements and Declarations of Trusts ("Trusts") of the Onondaga County Laborers' Health and Welfare, Pension, Annuity and Training Funds ("Funds"), the Funds' Collection Policy, and 29 U.S.C. § 1132(g)(2).  Presently before the Court is plaintiffs' motion for summary judgment.  Defendants oppose plaintiffs' motion.

**II.     BACKGROUND**

The Funds were established pursuant to Restated Agreements and Declarations of Trust, and are multi-employer and employee benefit plans as defined by ERISA, 29 U.S.C. §§ 1002(3) and (37).  The union is a labor organization within the meaning of the Labor-Management Relations Act of 1947, ("LMRA"), as amended, 29 U.S.C. § 144 *et seq.*.

Geddes Glass is a glazing subcontractor specializing in the trade of installing window frames and glass.  Acting manager of Geddes Glass, John Finn states in an affidavit that in 1999, Geddes Glass received a job at the Regional Market in Syracuse, New York.  Seeking two additional laborers to supplement its laborers and handle clean-up and general site work (not

glazier's work) at the Regional Market, John Finn contacted the Union. Finn spoke to Gabriel Rosetti, the union business agent, who noted that Geddes Glass did not have a collective bargaining agreement with the union. Rosetti advised Finn that he could not refer laborers until Geddes Glass signed a collective bargaining agreement. Rosetti avers that Finn "asked me whether the agreement covered employees currently working for Geddes Glass. He told me, in response to my questions, that the other employees of Geddes Glass were glaziers, not laborers. I then told him that the union had nothing do with the glaziers who Geddes Glass employed." In an affidavit, Rosetti states that he informed Finn that the Agreement "covers work in Onondaga County" and that "work" included any laborer's work performed by any employee in the union's jurisdiction. Finn denies that Rosetti made any such statement and avers that if Rosetti had, Finn would never have signed the Agreement because did not intend "to generally bind the corporation in this manner". Finn claims that their conversation "was to the opposite effect" and that "we discussed hiring two Union members to work only on the Regional Market job, and that there would be no other Union involvement." On December 17, 1999, Finn signed the collective bargaining agreement.

Pursuant to the Agreement, Geddes Glass remitted contributions to the union on behalf of the two union-laborers it hired for the Regional Market job, but did not make contributions on behalf of its existing non-union laborers. Plaintiffs claim that the Agreement obligated Geddes Glass to report the number of hours worked by, and to remit contributions to the Funds for various employee benefits on behalf of, all of its laborers, both union and non-union. Geddes Glass paid all of its employees scale wages and supplements or equivalents on the job, but did not, and to date refuses, to remit contributions to the Funds for its non-union laborers.

3

This action followed.

## III.   DISCUSSION

### A.   Summary Judgment Standard

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In evaluating a motion under Federal Rule of Civil Procedure 56, the Court reviews the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," Rule 56, to determine if there exists a genuine issue of material fact to preclude the moving party from a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 32 (1986).  If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial.  *See id*.  If the nonmovant fails to carry this burden, summary judgment is appropriate.  *See id*.

When considering a motion for summary judgment "involving the construction of contractual language," the Second Circuit has instructed that:

> a court should accord that language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish. There may not be any genuine issue regarding the inferences to be drawn from the language. The inferences may not be reasonably susceptible to having more than one meaning ascribed to them.

*Healy v. Rich Prod. Corp.*, 981 F.2d 68, 72 (2d Cir. 1992) (quotations and citations omitted).

### B.   Covered Employees

4

Plaintiffs claim they are entitled to the entry of summary judgment because defendants failed to make contributions on behalf of its non-union laborers even though the Agreement obligated Geddes Glass to remit contributions for each hour worked by all laborers, both union and non-union. Defendants oppose summary judgment and argue that the Agreement is ambiguous with regard to whether Geddes Glass was required to make contributions on behalf its non-union laborers. Defendants further argue that extrinsic evidence demonstrates that the Agreement was intended to cover union-laborers only, assert that Geddes Glass made contributions on behalf of the two union-laborers in its employ, and claim therefore that Geddes Glass fulfilled its obligation under the Agreement.

Plaintiffs aver, as an initial matter, that oral modification is not a defense under ERISA, and that defendants' argument should be dismissed as a matter of law. The Second Circuit has held that oral modification to a written collective bargaining agreement is not an available defense under ERISA. *See Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314, 316 (2d Cir. 1990) ("an employer may not assert that the union orally agreed not to enforce the terms of a collective bargaining agreement" explaining that courts have recognized two defenses: "(1) that the pension contribution themselves are illegal, and (2) that the CBA is void (not merely voidable)"). Thus, to the extent defendants assert oral modification, such defense is barred as a matter of law. *See id.*

The crux of defendants' argument, however, is not oral modification, but that the Agreement is ambiguous as to whether it covers non-union laborers. In *DeVito v. Hempstead China Shop*, the Second Circuit acknowledged that although certain contractual defenses are unavailable to an ERISA defendant, because ERISA "requires that an employer make

5

contributions in accordance with the terms and conditions of a collective bargaining agreement, plan trustees 'are not entitled to enforce a nonexistent contractual obligation.'".  38 F.3d 651, 653-54 (2d Cir. 1994) (quoting *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc*., 989 F.2d 132, 138 (3d Cir. 1993)).  The absence of a requirement that Geddes Glass make contributions on behalf of the non-union laborers in its employ on the effective date of the Agreement, would therefore preclude summary judgment for plaintiffs.

Whether a contract is ambiguous is a question of law.  *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998).  Contract language that is "reasonably susceptible to more than one reading", is ambiguous.  *Id*.  If a contractual provision is ambiguous, the Court may consider extrinsic evidence, otherwise, the Court must confine its interpretation to the document alone.  *O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc*., 37 F.3d 55, 58 (2d Cir. 1994).

In *Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315 (6th Cir. 1984), the Sixth Circuit considered and rejected the defendant employer's argument that the collective bargaining agreement to which it was a party required contributions only on behalf of those employees who were union members.  The Sixth Circuit held that the collective bargaining agreement unambiguously obligated the defendant employer to make contributions for both its union and non-union employees.  *Id*. at 318.  In interpreting the collective bargaining agreement, the court found: (1) that the "presence in the [collective bargaining agreement] of a recognition clause, designating the union as the exclusive bargaining agent for all employees indicates that fringe benefit contributions are required for both union and non-union members"; (2) that since the collective bargaining agreement defined employees by job

classification without regard for union membership, all employees within the job classification must be covered; (3) that because there was no language in the collective bargaining agreement which made any distinction between union and non-union employees, it must intend to cover all employees; and (4) that the union shop clause in the collective bargaining agreement requiring the defendant's employees to maintain membership in the union required only "payment of union dues and not union membership" was indicative of an intention that the collective bargaining agreement apply to all employees, not only union members. *Id*.

Utilizing the analysis the Sixth Circuit set forth in *Kohn*, a number of district courts within the Second Circuit have construed collective bargaining agreements to obligate an employer to make contributions for both union and non-union employees. *See Trustees of the Local 807 Labor-Mgmt. Health & Pension Funds v. River Trucking and Rigging, Inc.*, No. CV-03-3659, 2005 WL 2290579, *3 (E.D.N.Y. Sept. 20, 2005); *Demolition Workers Union, Local 95 Ins., Annuity and Pension Funds v. Mackroyce Contracting Corp.*, No. 97 CIV. 4094, 2000 WL 297244, *4 (S.D.N.Y. Mar. 22, 2000); *Plumbers, Pipefitters and Pension, Health and Educ. and Apprenticeship Plans v. Mauro's Plumbing, Heating and Fire Suppression Inc.*, 84 F.Supp.2d 344, 353 (N.D.N.Y. 2000); *Central Pension Fund of the Int'l Union of Operating Eng'rs and Participating Employers v. Murphy's Tire, Inc.*, No. 97-CV-814, 1998 WL 865594; *5 (N.D.N.Y. 1998); *New York State Teamsters Council Health and Hosp. Fund v. City of Utica*, 643 F.Supp. 619 (N.D.N.Y. 1986). The Court finds the Sixth Circuit's approach provides useful guidance in the analysis of the facts of this case.[1]

---

[1] Plaintiffs argue that collective bargaining agreements apply, as a matter of law, to both union and non-union employees. As stated above, most, if not all, courts have found that the collective bargaining agreement at issue required contributions on behalf of union and non-

1.       **Recognition Clause**

The parties cite the preamble to the Agreement as the recognition clause. It states, in relevant part:

> The Association and the Union named herein are negotiating agents for *their* present and future members. For any breach of this Agreement the liability of the members of the Association and the local Union shall be several and not joint, and the liability of the Association shall only be that of negotiating agent without liability for the acts of its respective members.

Rosetti Aff., Ex.A, p.1 (emphasis added). Plaintiffs claim that this provision indicates that the Agreement recognizes the union as the exclusive bargaining agent for all members of the bargaining unit. Defendants point out that the "recognition clause" refers to union members only, and argue that it does not recognize the union as the exclusive bargaining agent of all laborers or employees. Instead of stating, however, that the union is the exclusive bargaining agent for "all employees", this "recognition clause" states that the *union* is the negotiating agent for its present and future *members*. There is no reference in the preamble to bargaining unit members, or even to "all employees". *Cf. Kohn*, 749 F.2d at 318, n.3.[2]

---

union employees. In so ruling, however, courts have held only that collective bargaining agreements "may" require employers to contribute funds for all employees, not that they do so as a matter of law. Indeed, as indicated above, courts generally conduct a review of the collective bargaining agreement at issue to determine whether its contents unambiguously provide for employer contributions on behalf of both union and non-union employees. *See e.g. Kohn*, 749 F.2d at 318.

[2] To compare, the recognition clause in *Kohn* provided: "The employer recognizes the Union as the sole and exclusive bargaining agent on behalf of all employees of the Employers as hereinafter defined in Article II, with respect to wages, hours, and all other terms or conditions of employment." 749 F.2d at 318, n.3.

8

### 2. Job Classification

The Agreement does not define employee. It does, however, set forth laborer job classifications, *see e.g.* Rosetti Aff., Ex.A, p.27, For Your Information Jurisdiction ("The work processes outlined below shall be in keeping with prevailing area practices and in keeping with tasks normally associated with the Laborers Craft. Carpenter helper; mason and plasterer tender; fire watchers; flag persons . . ."), without distinction between union and non-union laborers.

### 3. Union Non-Union Distinction

The Agreement repeatedly refers to laborers and employees without distinction as to whether any laborer or employee is a union member. Article 5 of the Agreement, which governs "wages, fringe benefits, contributions & deductions", sets forth the hourly rates and contributions required for laborers, and although it distinguishes among laborers who are involved in residential construction, hazardous waste work, and asbestos removal, it makes no distinction between union and non-union laborers. Rosetti Aff., Ex.A, p.3. Article 5 also requires employers to make contributions to the Funds "for each hour worked for each employee straight time for the respective amount specified in this Article." Rosetti Aff., Ex.A, p.4. Moreover, Article 6, which governs "Welfare, Pension, Annuity & LECET Contributions", states that "It is the express agreement and understanding that any action with respect to delinquent employers as set forth and provided for in this Article is in recognition and for the purpose of protecting the rights of employees in the collective bargaining unit, their families and beneficiaries of said Welfare and Pension Funds." Rosetti Aff., Ex.A, p.9. None of these provisions distinguish between union and non-union laborers or employees.

### 4. Union Shop Clause

The Agreement's "Union Security" clause states:

> It is agreed that seven (7) days after the execution of this Agreement all laborers who are members of the Union must remain members in good standing as a condition of employment. All newly employed laborers hired by the contractor who are not members of the Union must become members after seven (7) days of employment. The Union agrees to accept and retain such members in accordance with all the Labor Laws as amended.

Rosetti Aff., Ex.A, p.17. There is no requirement in this provision that *all employees*, or *all laborers*, become union members. *Cf. Kohn*, 749 F.2d at 318.[3] Plaintiffs contend that under federal law, union membership means that although bargaining unit members must pay Union costs to enjoy the benefits of Union representation, they need not become full-fledged Union members. 29 U.S.C. § 164(b). Thus, plaintiffs argue, the Union Security clause evokes the Agreement's intent to cover all laborers, regardless of whether they are union member laborers or merely due-paying laborers. The Court finds, however, no discernable requirement in the

---

[3] In *Kohn*, the union shop clause stated:

> It shall be a condition of employment that all employees covered by this Agreement, who are members of the Union in good standing on the effective date of this Agreement, shall remain members in good standing by the payment of membership dues and those who are not members on the effective date of this Agreement shall, on the thirty-first (31) day following the effective date of this Agreement, become and remain members in good standing in the Union by payment of membership dues. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall on the thirty-first (31) day following the beginning of such employment, become and remain members in good standing in the Union by payment of membership dues.

749 F.2d at 318, n.3.

text of the Union Security clause that employees, like those employed by Geddes Glass who were not members of the Union at the time Finn executed the Agreement, become and remain members of the Union, even if on a dues-paying basis only.  The "union shop" clause in *Kohn*, in contrast, required as a condition of employment that: (1) all employees who were already union members to remain union members; (2) all employees who were not members on the effective date of the Agreement to become union members; and (3) all employees who were hired on or after the effective date of the Agreement to become union members.  749 F.2d at 318, n.3; *see also Mauro's Plumbing*, 84 F.Supp.2d at 354 ("all employees must 'become and remain members in good standing of the order to continue in employment.").  Here, there is no requirement in the Union Security clause that all employees who were not members on the effective date of the Agreement become members.  Indeed, the Union Security clause in this case contains union membership requirements for only two classes of laborers: (1) employees who are already members of the union at the time the employer enters the Agreement; and (2) employees who are hired on or after the effective date of the Agreement, neither of which encompass the employees at issue in this case.

   Having confined its review to the four corners of the document, and having accorded the terms their plain meaning, the Court concludes that the Agreement unambiguously covers those laborers who were union members at the time Geddes Glass executed the Agreement and those laborers who Geddes Glass hired on or after the effective date of the Agreement, but does not cover those laborers employed by Geddes Glass who were not union members on the effective date of the Agreement.  The "recognition clause" specifically provides that the union is the negotiating agent for its members, and contrary to plaintiffs' argument, does not say that the

union is the negotiating agent for members of the collective bargaining unit, which would include union and non-union employees. Moreover, the Union Security clause contains no provision which could reasonably be read to require non-union employees, like those working for Geddes Glass on the effective date of the Agreement, to become union members. The absence of a such a requirement is logical if non-union employees are not entitled to enjoy the benefits of having the Union as their collective bargaining agent. Likewise, the lack of a distinction between union and non-union employees in the Agreement further supports the Court's finding because such a distinction would not be necessary if, as here, the Agreement does not cover an employer's existing non-union employees. Thus, the Court concludes that the Agreement did not obligate Geddes Glass to make contributions on behalf of all employees. Further, because the Agreement is not reasonably susceptible to plaintiffs' interpretation, plaintiffs cannot contradict its plain meaning with parol evidence of its understanding of what the Agreement requires. *O'Neil*, 37 F.3d at 58. Accordingly, defendants are not liable to plaintiffs for the unpaid contributions sought in this action.

### C. Disposition

For the foregoing reasons, the Court finds the Agreement did not obligate defendants to make contributions and deductions on behalf of its non-union laborers. Since plan trustees are "not entitled to enforce a nonexistent contractual obligation", *Rolls-Royce Motor Cars,* 989 F.2d at 138, plaintiffs' motion for summary judgment is denied, and defendants are entitled to judgment as a matter of law.

A district court has the discretion to grant summary judgment *sua sponte*, even without notice in certain circumstances. *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir.

2000). The Court should, however, take care "to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." *Ramsey v. Coughlin*, 94 F.3d 71, 73-74 (2d Cir. 1996) (citing 6 James W. Moore, Moore's Federal Practice ¶ 56.12, at 56-165 (2d ed. 1995)).

In view of the unambiguous nature of the Agreement, the Court concludes that there are no issues of material fact requiring trial and that defendants are entitled to summary judgment as a matter of law. *See Hanson v. McCaw Cellular Comm'cs, Inc.*, 77 F.3d 663, 667-69 (2d Cir.1996) (where contract interpretation is at issue, summary judgment is proper where contract language is unambiguous). Plaintiffs cannot claim that they are procedurally prejudiced by the Court's entry of summary judgment on defendants' behalf because plaintiffs have fully briefed the issues of ambiguity and whether the Agreement covers non-union employees. Nor can plaintiffs claim that if they had notice of the Court's intent to enter summary judgment on defendants' behalf, they would have submitted additional evidence since the Court has found, as a matter of law, that the Agreement is unambiguous. Indeed, in the absence of any ambiguity, the collective bargaining agreement and the documents incorporated therein - all of which are presently before the Court - constitute the sole evidentiary materials on which the Court can rely in considering plaintiffs' claim that defendants were contractually obligated to remit contributions on behalf of non-union employees. *See O'Neil,* 37 F.3d at 58 (holding that if the contractual provisions are unambiguous the court must confine contractual interpretation to the document alone). The Court therefore concludes *sua sponte* entry of summary judgment to

defendants, without prior notice, will not prejudice plaintiffs.

### IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' motion for summary judgment is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court is directed to enter summary judgment for defendants; and it is further

**ORDERED** that the complaint is **DISMISSED**.

Dated: January 19, 2005
Syracuse, New York

Norman A. Mordue
U.S. District Judge